**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **MARILYN POWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:07-0452** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Plaintiff, an inmate at FPC Alderson and acting *pro se*, filed a Complaint initiating this

matter on July 20, 2007. (Document No. 1.)[1] Plaintiff asserts that employees of Defendant have

improperly administered her participation in the Inmate Financial Responsibility Program [IFRP].[2]

Plaintiff questions Defendants "administration of the IFRP double payments, and IFRP payments

based on money received from inmate families to later make the families responsible for the IFRP

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held
to a less stringent standard than if they were prepared by a lawyer, and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2]    On April 14, 2005, Plaintiff pled guilty in the Eastern District of Tennessee, United
States District Judge Thomas Phillips presiding, to three counts of an Indictment charging her with
making false, fictitious, or fraudulent claims against the United States. *United States v. Powell*,
Criminal No. 3:05-0007, in the United States District Court for Eastern District of Tennessee
(Knoxville), Document Nos. 17 - 19. Plaintiff was sentenced on March 2, 2006, to a 48 month term
of imprisonment and a three year term of supervised release. The District Court further required her
to pay a $300 special assessment and $59,865.28 restitution to the Internal Revenue Service and
ordered that she pay the entire amount, $60,165.28, immediately. *Id.*, Document No. 51. Plaintiff
appealed, and the Sixth Circuit Court of Appeals affirmed. *United States v. Powell*, 236 Fed.Appx.
194 (6th Cir. 2007.) It appears that Plaintiff has requested review in the United States Supreme Court,
and her request for review is pending.

payment . . ..”[3] Plaintiff indicates that she signed an inmate financial contract on November 10, 2006. Apparently, the amount of her payment under that contract was based upon her mother's and daughters' payments into her trust account. Plaintiff was assigned to UNICOR and requested that her November 10, 2006, contract be terminated and that she enter another financial contract providing for payments based upon her UNICOR income without consideration for her mother's and daughters' contributions. Plaintiff indicates that she processed her complaint about the circumstances administratively through every level to no avail. In February, 2007, Plaintiff was at the UNICOR grade 3 pay level. She indicates that in February, 2007, she did not make a $95 payment and was found to be "in refusal." It appears that Plaintiff's assignment to UNICOR was terminated. Plaintiff indicates that in March, 2007, inmates assigned to UNICOR were permitted to enter new financial contracts permitting them to make payments of 50% of their UNICOR income. Thereafter, Plaintiff states, she was informed through the Regional Office of the Bureau of Prisons in response to her administrative appeal that it had been determined that she was able to pay $95 more than 50% of her UNICOR income and it was appropriate to charge her this additional amount in view of her obligations and resources. In April, 2007, Plaintiff entered a new Inmate Financial Plan requiring her to make payments in the amount of $25. In May, 2007, she entered a new Inmate Financial Plan requiring payments in the amount of $75. Plaintiff states that in July, 2007, her mother and her son sent $75 to FPC Alderson to pay the $75 amount. Plaintiff indicates that in responding to her administrative complaints, Defendant did not mention

1. The double payment method forced on me while I was employed at UNICOR.
2. My past and current IFRP payments being based on what my family sent in.

_____

[3] Plaintiff refers to documents in her Complaint indicating that they are attached as exhibits, but no documents were included with her Complaint as the Clerk received and filed it.

3. My family paying my IFRP payments.

Plaintiff requests that she be awarded monetary damages and that the Court issue an injunction requiring Defendant

> to refrain from the double payment method forced on current and future UNICOR workers at Alderson Federal Prison Camp;

> to refrain from basing current and future inmates' IFRP payments . . . on what their families send in, they did not commit the crime and should not be held responsible for their restitution or fines. Inmates are employed by UNICOR and the institution and should be able to meet their own financial obligations while incarcerated in order to accept responsibility for their IFRP payments based on their institution and UNICOR pay. The burden of financial responsibility by inmates' families is unjust.

Because Plaintiff is a federal inmate alleging that she has suffered harm as a consequence of the conduct of federal officials, the undersigned finds that Plaintiff's claims must be considered under Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[4] The undersigned finds that this matter is not cognizable under 28 U.S.C. § 2241. See Summersett v. Baucknecht, 496 F.Supp.2d 636, 642 (D.S.C. 2007), ; Dominquez v. Bureau of Prisons, 2007 WL 4224329 (E.D.N.C.). Plaintiff is not complaining that she was coerced into participating in the IFRP; rather, she complains that Defendant improperly administered it as she participated in it. Plaintiff has not paid the filing fee or filed an Application to Proceed Without Prepayment of the Fees.

---

[4] A *Bivens* action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395 - 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under *Bivens* must show the violation of a valid constitutional right by a person acting under color of federal law.

## THE STANDARD

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), the Court may recommend dismissal of an action against a governmental entity or officer or employee of a governmental entity if the action is frivolous, malicious or fails to state a claim upon which relief can be granted. An action is frivolous or fails to state a claim for which relief can be granted if it is based upon an "indisputably meritless" legal theory or "clearly baseless" factual allegations. Denton v. Hernandez, 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## DISCUSSION

### A.    Plaintiff's Claims Under *Bivens*.

The Inmate Financial Responsibility Program is designed to assist inmates in meeting their "legitimate financial obligations." 28 C.F.R. § 545.10. The Bureau of Prisons has established a procedure for determining and reviewing inmates' payments of their financial obligations under the IFRP. Program Statement 5380.07.[5] "When an inmate has a financial obligation, unit staff shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation." The Bureau of Prisons applies a formula which takes into account inmates' "institution

---

[5] The District Court noted in *McKinnon v. Haynes*, 2007 WL 3275112 (N.D.W.Va.), *2 at fn. 1, that Program Statement 5380.07 has been rescinded and indicates that it has been replaced by Program Statement 5380.08. The undersigned has found that Program Statement 5380.08 is not available on the BOP's web page but has gathered from legal research that it is materially the same as Program Statement 5380.07 and is different in ways which are not material to these proceedings. The undersigned will left-side file a copy of Program Statement 5380.07 and documents obtained from the Eastern District of Tennessee pertaining to Plaintiff's conviction and sentence upon filing this Proposed Findings and Recommendation.

resources" and "non-institution (community) resources." 28 C.F.R. § 545.11(b). 28 C.F.R.

§ 545.11(b) provides that

> The inmate is responsible for making satisfactory progress in meeting his/her financial responsibility plan and for providing documentation of these payments to unit staff. Payments may be made from institution resources or and non-institution (community) resources. In developing an inmate's financial plan, the unit team shall first subtract from the trust fund account the inmate's minimum payment schedule for UNICOR or non-UNICOR work assignments set forth in paragraphs (b)(1) and (b)(2) of this section. The unit team shall then exclude from its assessment $75.00 a month deposited into the inmate's trust fund account. This $75.00 is excluded to allow the inmate the opportunity to better maintain telephone communication under the Inmate Telephone System (ITS).
>
> (1)Ordinarily, the minimum payment for non-UNICOR and UNICOR grade 5 inmates will be $25.00. This minimum payment may exceed $25.00, taking into consideration the inmate's specific obligations, institution resources, and community resources.
>
> (2) Inmates assigned grades 1 through 4 in UNICOR ordinarily will be expected to allot not less than 50% of their monthly pay to the payment process. Any allotment which is less than the 50% minimum must be approved by the Unit Manager. Allotments may also exceed the 50% minimum after considering the individual's specific obligations and resources.

See McGhee v. Clark, 166 F.3d 884, 887 (7th Cir. 1999)("[T]o count as available resources funds .

. . obtained from outside sources [is] expressly permitted by IFRP regulations."); Mujahid v.

Crabtree, 999 F.Supp. 1398, 1400 (D.Or. 1998)("The regulations allow the BOP to demand

'payment' from both 'institution resources' (*e.g.*, funds obtained from prison employment) as well

as 'non-institution resources' which include any funds that petitioner receives from sources such as

his family.") Thus, a financial plan is developed, and the inmate enters a "contract agreement." The

inmate's participation/progress in the IFRP is reviewed from time to time in conjunction with

assessing the inmate's level of responsible behavior. In Hudson v. True, 1999 WL 1285832 (D.Kan.),

the Court state that "[i]t is the BOP's position that an inmate 'with sizable obligations and

considerable community resources' is not 'exercising adequate responsibility by making minimum

5

payments.'"An inmate who fails or refuses to make payments according to an IFRP agreement is subject to certain restrictions and the loss of privileges as set forth in 28 C.F.R. § 545.11(d).

### 1.  Plaintiff's Due Process Claim.

Reading Plaintiff's Complaint liberally as the Court must, it may be regarded as raising claims that prison officials violated her constitutional rights of due process. Considering Plaintiff's due process claim broadly, the undersigned finds that the IFRP has been uniformly upheld against constitutional attack on due process grounds. Webb v. Hammidullah, 2007 WL 2138752 (N.D.W.Va.), *3. Looking more specifically at the circumstances which Plaintiff describes in her Complaint, it is evident that the BOP followed the process set forth in 28 C.F.R. §§ 545.10, *et seq.*, and Program Statement 5380.07. In view of the $60,165.28 amount which the District Court ordered Plaintiff to pay, a financial plan was established for her based appropriately upon her UNICOR earnings and amounts which she received from family members and were deposited into her trust account. Plaintiff entered a financial agreement. Upon Plaintiff's failure to do as she agreed, the BOP properly imposed sanctions as the BOP's regulations and Program Statement permit.

### 2.  Plaintiff's Equal Protection Claim.

Plaintiff's Complaint may also be read to state that prison officials violated her right to equal protection. Viable equal protection claims are based upon allegations that similarly situated individuals are treated differently without a rational relationship to a legitimate governmental purpose. In order to state a cognizable equal protection claim, a plaintiff must allege that defendants acted with intentional discrimination against a class of inmates which included plaintiff.  Johnson v. California,  543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005); Phillips v. Girdich, 408 F.3d

124, 129 (2d Cir. 2005). Plaintiff insinuates that other inmates were permitted to pay 50% of their UNICOR earnings through the IFRP, and she had to pay more than 50%. Plaintiff's allegations taken as true do not present a cognizable equal protection claim. They do not indicate the violation of a fundamental right or the different and discriminatory treatment of a protected class of inmates. Plaintiff basically complains that she was treated differently than other inmates insofar as she was required to pay more than 50% of her UNICOR earnings under the IFRP. Because Plaintiff owes a large amount in restitution, it was entirely reasonable for the BOP to expect that she would pay an additional amount over and above 50% of her UNICOR earnings. The regulations and Program Statement clearly permitted the BOP to require payment of the additional amount in view of money received from her family and deposited in her trust account. Plaintiff's circumstances are different from other inmates and she was treated accordingly.

Having considered Plaintiff's claims and the applicable law, the undersigned concludes that Plaintiff has not stated a factual basis under <u>Bivens</u> upon which relief can be granted and her Complaint must be dismissed.

**B.      Plaintiff's Request for an Injunction.**

Generally, in considering whether to issue an injunction, the District Court must balance the hardships likely to befall the parties if the injunction is, or is not, granted. <u>Blackwelder Furniture Co. v. Seilig Mfg. Co.</u>, 550 F.2d 189, 196 (4th Cir. 1977). Proper balancing of the hardships requires the District Court to weigh the relative importance of four factors:

(1)      the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;
(2)      the likelihood of harm to the defendant if the requested relief is granted;
(3)      the likelihood that the plaintiff will succeed on the merits; and
(4)      the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997) (*quoting* Rum Creek Coal Sales, Inc., v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). Consideration of the first two factors is the first step in the analysis. Blackwelder, 550 F.2d at 196. If the District Court concludes that the balance of the potential hardships favors the Plaintiff, then "it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." Reading Plaintiff's Complaint liberally as the Court must, the Court finds nothing indicating even remotely that a federal constitutional right has been or will be violated. There is no indication that Plaintiff has suffered or will suffer irreparable harm through the BOP's administration of her financial plan or the imposition of sanctions. Accordingly, Plaintiff's request for injunctive relief must be denied.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint (Document No. 1.) and **REMOVE** this matter from the Court's docket.

Plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Plaintiff shall have thirteen (13) days from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time

period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff who is acting *pro se*.

Date: February 4, 2008.

R. Clarke VanDervort
United States Magistrate Judge